# United States Court of Federal Claims

No. 12-224
May 6, 2013
PUBLISHED

_____

| | |
|---|---|
| **SERVICE DISABLED VETERAN OWNED SMALL BUSINESS NETWORK, INC.,** | |
| *Plaintiff,* | Subject matter jurisidiction; Bid Protest; Standing; Tucker Act |
| v. | |
| **UNITED STATES OF AMERICA,** *Defendant.* | |

_____

*Timothy H. Power,* attorney of record for plaintiff.

*Christopher L. Krafchek,* U.S. Department of Justice, Washington, DC, attorney of record for defendant.

## OPINION AND ORDER

***BLOCK, Judge.***

The instant bid-protest case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). But this is not a run-of-the-mill jurisdiction case. Indeed, this is a most unusual case. Typically, parties appear in court because they disagree over something. But here, the parties agree that no jurisdiction exists. *See* Defendant's Motion to Dismiss; Plaintiff's Response.

Consequently, this case is "much ado about nothing." William Shakespeare, Mr. William Shakespeares Comedies, Histories, & Tragedies 101 (1623). To be sure, the parties disagree on numerous issues. But these disagreements have nothing to do with the real issue now facing the court -- this court's jurisdiction. Because both parties agree that no jurisdiction exists, and because it appears that they are right, any other issues may not be considered. *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 384 (1884) (stating that "the first duty of [the] court is, *sua sponte*, if not moved to it by either party, to examine the sufficiency of [the] plea, and thus to take care that [no court] shall use the judicial power of the United States in a case to which the [C]onstitution and laws of the United States have not extended that power.").

As each party notes, dismissal is appropriate because the Network does not make the required showing that it is an interested party to a specific procurement. D's Mo.; P's Res.

Without this showing, the Network cannot establish standing and, therefore, this court cannot exercise subject-matter jurisdiction over the case. *See Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1344-45 (Fed. Cir. 2008). Accordingly, the pending motion to dismiss will be granted.

## I. BACKGROUND

### A. Factual Overview

Plaintiff, Service Disabled Veteran Owned Small Business Network, Inc. ("the Network"), is a non-profit organization aimed at "assisting veterans through the maze of paperwork, individuals, and agencies necessary for them to reach their goal of being a self-sufficient business."[1] To this end, the Network hosts monthly meetings for member organizations and supporters to confer and discuss issues particular to service-disabled veteran-owned businesses. *Id.* It also, apparently, litigates issues it determines are of interest to its constituents. In this case, it set its sights on the way United States Department of Veterans Affairs' ("VA") conducts its procurement processes. Amended Complaint at ¶1.

Specifically, the Network argues that the VA's current procurement process fails to properly consider whether certain contracting opportunities should be subject to restricted competition as small-business set-asides, pursuant to the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("the Act") 38 U.S.C. §§ 8127-8128 (2006). Am. Cmpl. at ¶1. The Act mandates that the VA restrict competition "to small business concerns owned and controlled by veterans if the contracting officer has a *reasonable expectation* that two or more small business concerns owned and controlled by veterans will submit offers..." *Id.* at § 8127(d) (emphasis added). The Network contends the Act, therefore, imposes a statutory duty on the VA to conduct market research to determine if there is a reasonable expectation that two or more of these businesses will submit offers. Am. Cmpl. at ¶9-14. In support of this position, the Network draws the court's attention to a Government Accountability Office ("GAO") recommendation finding that the VA's procurement process was in violation of the Act. Amen. Cmpl. at ¶29-31.

On October 11, 2011, the GAO issued a recommendation sustaining two bid protests, B-405271 and B-405524, on behalf of Aldevra, a food service and medical equipment supplier that does not appear to be a member of the Network.[2] The GAO found that the VA's use of the General Services Administration Federal Supply Schedule without first conducting market research violated the Act. *Id.* The GAO believed this research was necessary for the VA contracting officers to know if a reasonable expectation that two or more service-disabled veteran-owned small businesses would submit qualifying offers was appropriate. *Id.*

However, on October 20, 2011, the VA's Deputy Assistant Secretary for Acquisition and Logistics sent an email to the VA's acquisition and procurement personnel instructing that:

> [the] VA [has] determined this GAO recommendation, *Aldevra*, B-405271 and B-405524, dated October 11, 2011, shall not be followed. We expect this issue ultimately will be decided by the courts. Therefore, VA acquisition and procurement professionals

---

[1] See http://www.sdvosbnetwork.org/.
[2] This decision is available online at http://www.gao.gov/decisions/bidpro/405271.htm.

are to continue using the Federal Supply Schedules Program, when necessary and appropriate. The GAO recommendation does not change how VA will acquire goods and services in support of its mission.

Compl. at ¶ 30. Further, on October 28, 2011, the VA issued a press release announcing it would not follow the GAO recommendation. Amen. Cmpl. at ¶ 31. Because the GAO proceeding did not result in any change to the VA's procedures, plaintiff sought another avenue for relief.

## B. Procedural Overview

The Network originally filed their complaint in the District Court for the Northern District of California on December 6, 2011. They sought both declaratory and injunctive relief against the VA under the Administrative Procedures Act ("APA") §§ 702-706. 5 U.S.C. §§702-706; Amen. Cmpl. at ¶ 1. Specifically, they requested the court declare that the VA's procurement process was in violation of the Act due to its failure to perform market research and direct the VA to perform such research in future procurement processes.

Although the parties do not go to any great lengths to explain the procedural history of the case at the district court level, it appears events transpired as follows. On March 15, 2012, the District Court issued a stay on the case, directing plaintiff to file its claim in the Court of Federal Claims. The district court was concerned that the Network might be an interested party through associational standing and, thus, subject to this court's jurisdiction. D's Mo. at 2-3. Defendant filed a motion for reconsideration, arguing that 28 U.S.C. §1500 prevented the stay. P's Resp. at 3-4. On March 30, 2012, the District Court granted the motion for reconsideration, reversed its March 15 order, and lifted the stay. *Id.* The district court then transferred the case to this court based upon a want of jurisdiction. *Id.* On July 10, 2012, the Network filed their complaint with this court.

## II. DISCUSSION

### A. Jurisdictional Standards

Pursuant to RCFC 12(b)(1), defendant moves to dismiss the Network's claim for lack of subject matter jurisdiction. As the plaintiff, the Network generally bears the burden of establishing subject matter jurisdiction. *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). In evaluating a motion to dismiss, this court presumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the non-moving party. *Beure-Co. v. United States*, 16 Cl. Ct. 42 (1988).

This court's bid protest jurisdiction is founded upon § 1491(b)(1) of the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996. 28 U.S.C. § 1491(b)(1); Pub. L. No. 104-320, 110 Stat. 3870 (1996). This amendment confers jurisdiction over bid protest cases, defined as an objection by an interested party "to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any violation of statute or regulation in connection with a procurement or a proposed procurement." *Id*.

**B. Analysis**

As Justice Powell once penned, "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues . . . whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The issue of standing is at the core of the broader concept of justicability, that is, the power of courts to lawfully hear cases and dispense judgments.  The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Clearly the Network must establish standing under the Tucker Act to sustain its complaint in this court. 28 U.S.C. § 1491(b)(1).

Standing in bid-protest cases under the Tucker Act requires two elements.  A plaintiff must (i) be an interested party and (ii) allege a statutory or regulatory violation in connection with a procurement or a proposed procurement. 28 U.S.C. § 1491(b)(1); *See also Distributed Solutions* 539 F.3d at 1340.  The Federal Circuit has defined "interested party" as an "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001).

The Network does not satisfy either of these elements.  They do not cite a specific procurement action in their complaint and they do not identify any of the Network's constituents as actual or prospective bidders or offerors to a government contract.  Instead, they seek declaratory relief that the VA's current procurement procedure is unlawful and an injunction preventing its use in unspecified future procurements. Compl. at ¶ 1.

The parties concur that the Network lacks standing to pursue a bid protest action in this court. *See* Def's Mo.; P's Res.  In fact, plaintiff's response goes so far as to state that they find themselves "in the unusual position of agreeing with most of the positions in Def's Mo. to Dismiss." Pl.'s Resp. at 5.  To be sure, they appear to be correct. *E.g., Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  The source of disagreement between the parties, instead, centers on the unrelated issue of whether the district court possesses power to grant remedy under the Administrative Procedures Act.

Plaintiff contends that the district court misapplied the general rule of associational standing, incorrectly concluding that the Network might be an interested party on the basis that one or more of its members might qualify for that status. P's Res. at 5.  They opposed the district court's transfer and request that this court dismiss the case for lack of subject matter jurisdiction so they can pursue an APA claim in the district court. *Id.*

Defendant disputes the availability of an APA remedy in the district court. Def's Rep. at 6-7.  They argue that an APA remedy is only appropriate when there is no other adequate remedy

Case 1:12-cv-00224-LB   Document 16   Filed 05/06/13   Page 5 of 5

in court. *Id.* at 5.  In their view, the Tucker Act provides such an adequate remedy and thus precludes any APA review. *Id*.  Essentially, they contend that the Tucker Act provides the sole avenue for challenge of the VA's procurement procedures.

Defendant also argues that the sunset provision for federal district courts' bid protest jurisdiction in § 12(d) of the Administrative Dispute Resolution Act of 1996 eliminated Tucker Act jurisdiction in federal district courts for matters arising after 2001. *Id.* at 3-4.  Their position is that the VA's current procedure relates to the procurement process and falls within the bid protest jurisdiction of the Tucker Act and, hence, solely in the Court of Federal Claims.  In sum, their position is that this case is in the right court but brought by the wrong plaintiff.

The result of all this is that the parties agree on the determinative issue - that this court does not have subject-matter jurisdiction to hear this case.  What they disagree about is whether a different sort of remedy should be granted by a different court.  However, again, as Shakespeare put it: that is much ado about nothing.

This court does not reach the question of whether an APA remedy is available in district court because it finds plaintiff lacks the standing necessary to sustain a bid protest.  It is clear that "standing is a threshold jurisdictional issue." *Myers* 275 F.3d at 1369 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998)).  Because this case cannot cross the threshold, this court sees no reason to expound on another court's jurisdiction and powers to grant remedy.  Plaintiff's claim is hereby dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

### III. CONCLUSION

Accordingly, this court finds in favor of defendant.  Defendant's **MOTION** to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is **GRANTED**.  The Clerk is hereby directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED**

s/ *Lawrence J. Block*

**Lawrence J. Block**
**Judge**